UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MARK FEATHERS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>BANK OF AMERICA, N.A., et al.,<br><br>　　　　　Defendants. | Case No.  5:16-cv-00086-EJD<br><br>**ORDER GRANTING PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. No. 8 |

On or about February 27, 2006, Plaintiff Mark Feathers ("Plaintiff") and non-party Natalie Feathers executed a Deed of Trust secured by a promissory note for $1.875 million dollars in favor of Wells Fargo Bank, N.A. in order to purchase certain real property located in Los Altos, California. See "Addenda to Amended Complaint," Docket Item No. 16, at Ex. A.  Plaintiff alleges in a "Verified Amended Complaint for Damages" (the "AC") that he stopped making payments required by the Deed of Trust in July, 2012, and since then has unsuccessfully attempted at various times and through various ways to obtain a modification of the underlying loan.  More recently, a Notice of Trustee's Sale was recorded against the Los Altos property on December 30, 2015, which notified Plaintiff that a trustee's sale was scheduled for January 21, 2016.  See AC, Docket Item No. 13, at Ex. 1.

In response, Plaintiff initiated this action on January 7, 2016, against Defendants Bank of America, N.A, "Wells Fargo Bank through its wholly owned subsidiary Wells Fargo Home Mortgage," and NBS Default Services, LLC (collectively, "Defendants") - which are alleged to be the current noteholder, loan servicer, and trustee in the order named - and asserts eleven causes of

1

Case No.: 5:16-cv-00086-EJD
ORDER GRANTING PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

action. Under the current state of the pleadings, federal jurisdiction arises pursuant to 28 U.S.C. § 1331.[1]

Presently before the court is Plaintiff's ex parte application for a temporary restraining order ("TRO") through which Plaintiff seeks to enjoin the January 21st trustee's sale. See Docket Item No. 8. Having reviewed the relevant pleadings, the court finds, concludes and orders as follows:

1. The standard for issuing a TRO is the same as that for the issuance of preliminary injunction. See New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co., 434 U.S. 1345, 1347 n.2 (1977). A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. NRDC, Inc., 555 U.S. 7, 22 (2008). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009). A preliminary injunction may also issue if "serious questions going to the merits were raised and the balance of the hardships tips sharply in the plaintiff's favor," thereby allowing preservation of the status quo where complex legal questions require further inspection or deliberation. Alliance for the Wild Rockies v. Cottrell, 622 F.3d 1045, 1049 (9th Cir. 2010).

2. Where, as here, pleadings are filed by a plaintiff proceeding pro se, they must be construed liberally. Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000). In doing so, the court "need not give a plaintiff the benefit of every conceivable doubt" but "is required only to draw

---

[1] Although Plaintiff contends that federal jurisdiction arises on the basis of diversity, his allegations are insufficient to invoke such jurisdiction because he does not identify any of the defendants' principal places of business. See Davis v. HSBC Bank Nev., N.A., 557 F.3d 1026, 1028 (9th Cir. 2008) ("A corporation is a citizen of (1) the state under whose laws it is organized or incorporated; and (2) the state of its 'principal place of business.'"); see also Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001) ("[A] party seeking to invoke diversity jurisdiction should be able to allege affirmatively the actual citizenship of the relevant parties" in order to confirm that all parties are diverse.").

2
Case No.: 5:16-cv-00086-EJD
ORDER GRANTING PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

every reasonable or warranted factual inference in the plaintiff's favor." McKinney v. De Bord, 507 F.2d 501, 504 (9th Cir. 1974).  The court "should use common sense in interpreting the frequently diffuse pleadings of pro se complainants." Id.

     3.    As an initial matter, an ex parte TRO application must satisfy Federal Rule of Civil Procedure 65(b)(1), which demands notice to the opposing party or parties.  Plaintiff avers that he notified Defendants of his intent to seek injunctive relief and sent copies of the TRO application to Defendants on January 12, 2016.  The court therefore proceeds to an analysis of the Winter factors.

     4.    Plaintiff focuses on two issues in an effort to demonstrate a likelihood of success: (1) Defendants' alleged violation of an injunction issued in another federal action involving Plaintiff, and (2) alleged violations of the California Homeowner's Bill of Rights and related requirements.  Liberally construing Plaintiff's pleadings, the court finds the second argument persuasive for the purposes of this application.

     5.    The AC contains a cause of action for violation of California Civil Code § 2923.55.  Under subsection (a)(1) of that statute, "[a] mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent may not record a notice of default . . . until . . . [t]he mortgage servicer has satisfied the requirements of paragraph (1) of subdivision (b)."  Subdivision (b)(1) requires a mortgage servicer to "send the following information in writing" to the borrower:

> (A) A statement that if the borrower is a servicemember or a dependent of a servicemember, he or she may be entitled to certain protections under the federal Servicemembers Civil Relief Act (50 U.S.C. Appen. Sec. 501 et seq.) regarding the servicemember's interest rate and the risk of foreclosure, and counseling for covered servicemembers that is available at agencies such as Military OneSource and Armed Forces Legal Assistance.
>
> (B) A statement that the borrower may request the following:
>
> (i) A copy of the borrower's promissory note or other evidence of indebtedness.
>
> (ii) A copy of the borrower's deed of trust or mortgage.
>
> (iii) A copy of any assignment, if applicable, of the borrower's

3

Case No.: 5:16-cv-00086-EJD
ORDER GRANTING PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

> mortgage or deed of trust required to demonstrate the right of the mortgage servicer to foreclose.
>
> (iv) A copy of the borrower's payment history since the borrower was last less than 60 days past due.

"[T]he only remedy for a violation of section 2923.55, when no trustee's sale has occurred yet, is to delay foreclosure until the statute has been complied with." Aguirre v. Wells Fargo Bank, N.A., No. CV 15-1816-GHK (MRWx), 2015 U.S. Dist. LEXIS 86717, at *10, 2015 WL 4065245 (C.D. Cal. July 2, 2015).

6.   In California, a notice of default is important because it is the recording of that document by "[t]he trustee, mortgagee, or beneficiary, or any of their authorized agents" that commences the nonjudicial foreclosure process. Cal. Civ. Code § 2924(a)(1). Only after the notice of default is filed may a notice of trustee's sale be recorded. Cal. Civ. Code § 2924(a)(1).

7.   Here, the present record does not reveal when, or if, Defendants recorded a notice of default against the Los Altos property. Assuming one was recorded, it is equally unclear from the record whether Defendants complied with § 2923.55(a)(1) by sending Plaintiff the written notice described in § 2923.55(b)(1) before commencing the foreclosure process. Indeed, Plaintiff alleges that Wells Fargo did not contact him between June, 2015, and December, 2015, when he received notification of a newly appointed "home preservation specialist" and then, one week later, received the Notice of Trustee's Sale. See AC, at ¶ 22(h). Moreover, Plaintiff alleges he was never informed of the "loan being placed into default by Wells Fargo" or of information seemingly required by § 2923.55(b)(1) - that the loan was sold to Bank of America but that Wells Fargo retained servicing rights and the right to foreclose. From these allegations, it can be reasonably inferred that Defendants recorded the Notice of Trustee's Sale without complying with § 2923.55's pre-foreclosure written notice requirements. And on that basis, the court finds that Plaintiff has demonstrated a likelihood of success on the cause of action asserting a violation § 2923.55.

8.   The court further finds that Plaintiff has satisfied the remaining elements necessary

for the issuance of a TRO. "Courts have repeatedly concluded that the loss of one's home is sufficient to satisfy the element of irreparable injury." Castellanos v. Countrywide Bank NA, No. 15-cv-00896-BLF, 2015 U.S. Dist. LEXIS 25030, at *4, 2015 WL 914436 (N.D. Cal. Feb. 27, 2015). Plaintiff has submitted a declaration explaining that he and his family reside at the Los Altos property and will experience significant hardship if they are displaced by a foreclosure sale. See Decl. of Mark Feathers Re: Irreparable Harm. In addition, the balance of hardships tips to Plaintiff because, on the one hand, Plaintiff risks a loss of his home, while on the other, "it is hard to conceive of a serious hardship to Defendants [from a TRO] . . . because any security they have in the real property would still remain," assuming the security is valid. Tamburri v. Suntrust Mortg., Inc., No. C-11-2899 EMC, 2011 U.S. Dist. LEXIS 72202, at *4, 2011 WL 2654093 (N.D. Cal. July 6, 2011). Finally, "[i]t is in the public interest to allow homeowners an opportunity to pursue what appear to be valid claims before being displaced from their homes." Sencion v. Saxon Mortg. Servs., LLC, No. 5:10-cv-3108 JF, 2011 U.S. Dist. LEXIS 41022, at *8-9, 2011 WL 1364007 (N.D. Cal. Apr. 11, 2011).

9.  Accordingly, Plaintiff's TRO application is GRANTED.

Commencing upon the filing of this order, Defendants are enjoined and shall not proceed with any trustee's sale of the real property commonly known as 1520 Grant Road, Los Altos, California, 94024, which sale is currently scheduled to occur on January 21, 2016, at 11:00 a.m., until further order of the court.

This order was issued on an ex parte basis because time is of the essence, given the imminent trustee's sale.

Plaintiff shall immediately, and no later than **12:00 p.m. on January 21, 2016,** serve on all Defendants copies of: (1) this order, (2) the TRO Application and all related documents and attachments, and (3) the AC and all related documents and attachments. Plaintiff shall thereafter file a certificate of service on or before **4:00 p.m. on January 21, 2016**. Plaintiff is advised that failure to complete service as required by Federal Rule of Civil Procedure 65(d)(2) and this order,

5

Case No.: 5:16-cv-00086-EJD
ORDER GRANTING PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

or failure to file a certificate of service by the deadline provided, may result in the dissolution of the TRO.

The posting of a bond will not be required under Federal Rule of Civil Procedure 65(c) because "there is no realistic likelihood of harm to the defendant[s]" from enjoining the trustee's sale. <u>Johnson v. Couturier</u>, 572 F.3d 1067, 1086 (9th Cir. 2009).

Defendants are ordered to appear before the undersigned at **9:00 a.m. on January 29, 2016**, to show cause why a preliminary injunction incorporating the temporary restraining order specified above should not issue. Any memorandum in opposition to the order to show cause shall not exceed 10 pages in length and shall be filed and served on or before **4:00 p.m. on January 25, 2016**. Any reply to the opposition shall not exceed 6 pages in length and shall be filed and served on or before **4:00 p.m. on January 27, 2016**.

The TRO shall remain in effect until 11:40 a.m. on February 2, 2016, unless the court orders otherwise.

**IT IS SO ORDERED.**

Dated: January 19, 2016 at 11:40 a.m.



EDWARD J. DAVILA
United States District Judge

Case No.: 5:16-cv-00086-EJD
ORDER GRANTING PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

6