1

2

3

4                        UNITED STATES DISTRICT COURT

5                      NORTHERN DISTRICT OF CALIFORNIA

6                             SAN JOSE DIVISION

7

8    MARK FEATHERS,                          Case No.  5:16-cv-00086-EJD

              Plaintiff,
9                                            ORDER DISCHARGING ORDER TO
                                             SHOW CAUSE RE: PRELIMINARY
10         v.                                INJUNCTION

11   BANK OF AMERICA, N.A., et al.,

              Defendants.
12

13         Plaintiff Mark Feathers ("Plaintiff") brings this action against Bank of America, N.A.,

14   "Wells Fargo Bank through its wholly owned subsidiary Wells Fargo Home Mortgage," and NBS

15   Default Services, LLC (collectively, "Defendants") for alleged irregularities in the processing and

16   servicing of the loan he obtained to purchase a home in Los Altos, California.  Plaintiff previously

17   sought a temporary restraining order ("TRO") to postpone a planned trustee's sale of the Los Altos

18   property based on two of the eleven claims listed in the "Verified Amended Complaint for

19   Damages" (the "AC").  The court found that one of these claims justified relief and issued a TRO

20   and Order to Show Cause ("OSC") to Defendants.  Wells Fargo and Bank of America filed a

21   return to the OSC, opposing a preliminary injunction.

22         Federal jurisdiction arises pursuant to 28 U.S.C. § 1331.  Now that both sides have filed

23   pleadings in this case, it is evident that Plaintiff is not likely to succeed on the limited statutory

24   claim that supported the TRO.  Nor can Plaintiff succeed on the other claim he cited in the TRO

25   application.  Accordingly, a preliminary injunction will not issue and the January 19th OSC will

26   be discharged.

27

28
                                               1
     Case No.: 5:16-cv-00086-EJD
     ORDER DISCHARGING ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION

*United States District Court*
*Northern District of California*

## I.   BACKGROUND

As previously observed, Plaintiff and non-party Natalie Feathers executed, on or about February 27, 2006, a Deed of Trust secured by a promissory note for $1.875 million dollars in favor of Wells Fargo Bank, N.A. in order to purchase the Los Altos property.  According to the AC, Plaintiff stopped making the payments required by the Deed of Trust in July, 2012, after his "business was unexpectedly placed into receivership and [Plaintiff] and his spouse lost their income."

The receivership referenced by Plaintiff was ordered as part of another action pending in this court, <u>Securities and Exchange Commission v. Small Business Capital Corp.</u>, Case No. 5:12-cv-03237-EJD (the "SEC Action"), in which Plaintiff was named as a defendant.  The stipulated order appointing the receiver, filed on July 10, 2012, included the following provision, among others:

> IT IS FURTHER ORDERED that, except by leave of this Court, during the pendency of this receivership, all clients, investors, trust beneficiaries, note holders, creditors, claimants, lessors and all other persons or entities seeking relief of any kind, in law or in equity, from [Plaintiff] . . . and all persons acting on behalf of any such investor, trust beneficiary, note holder, creditor, claimant, lessor, consultant group or other person, including sheriffs, marshals, servants, agents, employees and attorneys, are hereby restrained and enjoined from, directly or indirectly, with respect to these persons and entities . . . commencing, prosecuting, continuing or enforcing any suit or proceeding (other than the present action by the Commission or any other action by the government) against any of them . . . .

Plaintiff alleges that Wells Fargo sold his loan to Bank of America after its origination, but still services the loan on behalf of Bank of America.  He has applied to Wells Fargo several times for a loan modification, but has been unsuccessful.  Plaintiff attributes this lack of progress to Wells Fargo's internal operations, which he alleges resulted in an ever-changing list of loan representatives assigned to his account.

More recently, a Notice of Trustee's Sale was recorded against the Los Altos property on December 30, 2015, which notified Plaintiff that a sale was scheduled for January 21, 2016. Plaintiff initiated this action on January 7, 2016, and the court issued a TRO on January 19, 2016.

1    The trustee's sale has since been postponed to March 29, 2016.

2    **II.    LEGAL STANDARD**

3        **A.    Injunctive Relief**

4        A preliminary injunction is "an extraordinary remedy that may only be awarded upon a

5    clear showing that the plaintiff is entitled to such relief."  Winter v. Natural Res. Def. Council,

6    Inc., 555 U.S. 7, 22 (2008); Lopez v. Brewer, 680 F.3d 1068, 1072 (9th Cir. 2012) ("A

7    preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted

8    unless the movant, by a clear showing, carries the burden of persuasion.'").

9        "To obtain a preliminary injunction, the moving party 'must establish that: (1) it is likely to

10   succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary

11   relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest."

12   Idaho v. Coeur D'Alene Tribe, 794 F.3d 1039, 1046 (9th Cir. 2015) (quoting Pom Wonderful LLC

13   v. Hubbard, 775 F.3d 1118, 1124 (9th Cir. 2014)).

14       In addition, "'serious questions going to the merits' and a hardship balance that tips

15   sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the

16   plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the

17   public interest."  Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1132 (9th Cir. 2011).

18   This articulation represents "one alternative on a continuum" under the 'sliding scale' approach  to

19   preliminary injunctions employed" by the Ninth Circuit.  Id. at 1131-32.

20       **B.    Pro Se Pleadings**

21       Where pleadings are filed by a plaintiff proceeding pro se, they must be construed

22   liberally.  Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000).  In doing so, the court "need not

23   give a plaintiff the benefit of every conceivable doubt" but "is required only to draw every

24   reasonable or warranted factual inference in the plaintiff's favor."  McKinney v. De Bord, 507

25   F.2d 501, 504 (9th Cir. 1974).  The court "should use common sense in interpreting the frequently

26   diffuse pleadings of pro se complainants."  Id.

27

28

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

## III.   DISCUSSION

Plaintiff's TRO application cited two claims from the AC: one asserting a violation of California Homeowner's Bill of Rights ("HBOR"), and one asserting that Defendants violated the injunction filed in the SEC Action.  Although the possible viability of the former claim was sufficient for a TRO, it is now apparent that neither it nor the latter claim justifies a preliminary injunction.

### A.  Violation of HBOR

In California, the nonjudicial foreclosure process commences when a notice of default is recorded by the trustee, mortgagee, or beneficiary, or any of their authorized agents.  Moeller v. Lien, 25 Cal. App. 4th 822, 830 (1994), Cal. Civ. Code § 2924(a)(1).  Once that occurs, a notice of trustee's sale can then be recorded.  Cal. Civ. Code § 2924(a)(3).  The trustee may then "postpone the sale at any time before the sale is completed."  Moeller, 25 Cal. App. 4th at 830.

In reviewing the TRO application, the court focused its analysis on California Civil Code § 2923.55, the violation of which can support a claim under the HBOR.  See Rockridge Trust v. Wells Fargo, N.A., 985 F. Supp. 2d 1110, 1148 (2013).  Subsection (a)(1) of § 2923.55 provides certain requirements that must be observed before the recording of a notice of default.  To that end, "[a] mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent may not record a notice of default . . . until . . . [t]he mortgage servicer has satisfied the requirements of paragraph (1) of subdivision (b)."  In turn, subdivision (b)(1) requires a mortgage servicer to "send the following information in writing" to the borrower:

> (A)   A statement that if the borrower is a servicemember or a dependent of a servicemember, he or she may be entitled to certain protections under the federal Servicemembers Civil Relief Act (50 U.S.C. Appen. Sec. 501 et seq.) regarding the servicemember's interest rate and the risk of foreclosure, and counseling for covered servicemembers that is available at agencies such as Military OneSource and Armed Forces Legal Assistance.
>
> (B) A statement that the borrower may request the following:
>
> (i) A copy of the borrower's promissory note or other evidence of indebtedness.
>
> (ii) A copy of the borrower's deed of trust or mortgage.

4

Case No.: 5:16-cv-00086-EJD
ORDER DISCHARGING ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION

(iii) A copy of any assignment, if applicable, of the borrower's mortgage or deed of trust required to demonstrate the right of the mortgage servicer to foreclose.

(iv) A copy of the borrower's payment history since the borrower was last less than 60 days past due.

After liberally construing Plaintiff's pleadings, the court issued a TRO because it was unclear solely from those documents whether or not Defendants had observed all of the requirements for a nonjudicial foreclosure. Indeed, it could not be established whether or when Defendants recorded a notice of default. If one was recorded, it was equally unclear whether Defendants had complied with § 2923.55, and any deficiency in this process needed to be resolved before the trustee's sale could occur. See Aguirre v. Wells Fargo Bank, N.A., No. CV 15-1816-GHK (MRWx), 2015 U.S. Dist. LEXIS 86717, at *10, 2015 WL 4065245 (C.D. Cal. July 2, 2015) ("[T]he only remedy for a violation of section 2923.55, when no trustee's sale has occurred yet, is to delay foreclosure until the statute has been complied with.").

In their return to the OSC, Wells Fargo and Bank of America have adequately established compliance. Indeed, a letter produced by Wells Fargo dated May 17, 2013, and addressed to Plaintiff and Natalie Feathers contains the notice required by § 2923.55. Decl. of Jessica Suzanne Phillips, Dkt. No. 37, at Ex. 5. Plaintiff must have received this letter because he included a portion of it in his own pleadings. In addition, it is now evident that a notice of default was recorded against the Los Altos property on July 10, 2013, after the § 2923.55 notice letter was sent Plaintiff. Id. at Ex. 7.

Plaintiff does not directly address the significance of these documents in the context of the statutory requirements, but instead suggests he has been improperly "dual-tracked." Dual tracking in violation of California Civil Code § 2923.6 "is the practice of pursuing foreclosure proceedings while a borrower's loan modification application is still pending." Johnson v. PNC Mortg., No. 14-cv-02976-LB, 2014 U.S. Dist. LEXIS 111846, at *24, 2014 WL 3962662 (N.D. Cal. Aug. 12, 2014). The statutory protection against "dual tracking" precludes the recording of a notice of default or notice of sale, or conducting a trustee's sale while "the complete first lien loan

United States District Court
Northern District of California

1  modification application is pending." Cal. Civ. Code § 2923.6(a). However, the prohibition does

2  not apply when the borrower has previously been evaluated for a loan modification. Cal. Civ.

3  Code §§ 2923.6(g) ("[T]he mortgage servicer shall not be obligated to evaluate applications from

4  borrowers who have already been evaluated or afforded a fair opportunity to be evaluated for a

5  first lien loan modification . . . .").

6       Here, Plaintiff has not convincingly established "dual tracking" in violation of § 2923.6.

7  None of Plaintiff's documents show that Defendants recorded a notice of default or notice of

8  trustee's sale during the pendency of his first loan modification application, which he alleges was

9  submitted to Wells Fargo in November, 2013 - after the notice of default had already been

10  recorded - and which Wells Fargo declined in December, 2014. See AC, at ¶¶ 16, 21. It may be,

11  as Plaintiff indicates in the AC, that the trustee's sale was postponed while Wells Fargo reviewed

12  his modification application, but such a postponement is not a violation of § 2923.6. In fact, this

13  suggests that Defendants were not engaged in "dual tracking" because they were not actively

14  pursuing foreclosure while also reviewing Plaintiff's application for a loan modification.

15       In sum, Plaintiff has not made a clear showing that Defendants failed to comply with the

16  requirements promulgated by the foreclosure statutes. As such, the court finds that Plaintiff is not

17  likely to prevail on a claim for violation of the HBOR, and has not raised serious questions

18  regarding the merits of an HBOR violation.

19          **B.**    **Violation of Injunction Issued in SEC Action**

20       Plaintiff also sought a TRO based on Defendants' purported violation of the injunction

21  from the SEC Action, which as detailed above contained a provision restraining Plaintiff's

22  creditors from pursuing claims during the pendency of the receivership. Plaintiff's argument

23  appears to be that the injunction should be enforced so as to prevent Defendants from proceeding

24  with the trustee's sale.

25       Plaintiff's reliance on the injunction in the SEC Action as a basis for injunctive relief in

26  this case is unpersuasive. This court - which also supervises the receivership in the SEC Action -

27  recently observed that the purpose of the injunction was to preserve assets for the benefit of

28

United States District Court
Northern District of California

6

Case No.: 5:16-cv-00086-EJD
ORDER DISCHARGING ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION

injured investors.  <u>SEC v. Small Bus. Capital Corp.</u>, No. 5:12-cv-03237-EJD, 2016 U.S. Dist. LEXIS 14504 (N.D. Cal. Feb. 5, 2016).  That purpose can no longer be fulfilled with respect to the Los Altos property, however, because the SEC's lien on the property was dissolved by the bankruptcy court on April 7, 2015.  <u>Id</u>.  Consequently, the SEC has been left without a legally-enforceable interest and there is no reason to enforce the restraint on creditors to enjoin a disposition of the Los Altos property.

Furthermore, the injunction in the SEC Action was not meant to be utilized by Plaintiff as a shield against his creditors, particularly when the SEC is not pursuing an asset on behalf of injured investors.  Thus, even assuming - without actually finding - that recording the Notice of Default on July 10, 2013, constituted a violation of the order, its was up to the SEC to apply for a remedy, not Plaintiff.

Because Plaintiff is not likely to succeed on the claim for violation of the injunction in the SEC Action, and because there are not serious questions going to the merits of that claim, it cannot support a preliminary injunction in this action.

**IV.    ORDER**

Plaintiff has not met his burden to demonstrate a clear entitlement to injunctive relief. Accordingly, the order to show cause re: preliminary injunction is DISCHARGED.

**IT IS SO ORDERED.**

Dated: February 19, 2016



EDWARD J. DAVILA
United States District Judge

Case No.: 5:16-cv-00086-EJD
ORDER DISCHARGING ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION